COURT OF APPEALS
SECOND DISTRICT OF TEXAS
FORT WORTH
 
NO. 2-03-367-CV
  
  
KHOSROW 
SADEGHIAN                                                         APPELLANT
  
V.
  
JERRY 
WEBB, JANICE WEBB,                                                  APPELLEES
AND 
WELDON WILSON
 
 
------------
 
FROM 
THE 393RD DISTRICT COURT OF DENTON COUNTY
 
------------
 
MEMORANDUM OPINION[1]
 
------------
        Appellant 
Khosrow Sadeghian appeals from sanctions imposed against him under Texas Rule of 
Civil Procedure 13.  We affirm in part and reverse and render in part.
BACKGROUND
        On 
March 31, 2000, Appellant filed suit against Appellees Weldon Wilson, Jerry 
Webb, and Janice Webb, alleging that in 1998 Appellees had trespassed upon 
property he had purchased the year before. Specifically, Appellant alleged that 
Wilson, at the direction of and as an employee of the Webbs, utilized a 
tractor/front-end loader to expand Laney Road and in the course of doing so, 
trespassed, invaded, and encroached upon the entire length of the eastern 
boundary of Appellant’s property. Appellant also alleged that Wilson, as 
employee of the Webbs, destroyed fences along the western boundary of 
appellant’s property, and created a drainage ditch channeling water onto the 
property thereby creating a ten-foot by six-foot deep canyon, effectively 
cutting off Appellant from the northern third of the property; this was all in 
violation of the Texas Water Code. Lastly, Appellant alleged that Appellees cut 
down more than twenty, eight-foot poplar trees on Appellant’s property. 
Appellant sought actual and exemplary damages and subsequently amended his 
petition to request a permanent injunction.
APPELLEES’ PLEADINGS
        Wilson 
filed an original answer that included a general denial, verified denials, and 
affirmative defenses. He also filed a counterclaim contending he was entitled to 
recover sanctions under Texas Rules of Civil Procedure 13 and 215 and Chapter 9 
of the Texas Civil Practice and Remedies Code because Appellant’s claims are 
groundless and brought in bad faith and for purposes of harassment. See Tex. R. Civ. P. 13, 215; Tex. Civ. Prac. & Rem. Code Ann. ch. 
9 (Vernon 2002). The Webbs filed an original answer that included special 
exceptions, a verified denial, affirmative defenses, a general denial, and a 
general claim for attorney’s fees. The Webbs did not file a counterclaim 
seeking to recover sanctions, nor did the request for attorney’s fees specify 
any statute or rule under which the Webbs sought attorney’s fees.
TRIAL ON THE MERITS
        A 
bench trial was held on October 8, 2003. At the conclusion of Appellant’s 
case-in-chief, Appellees made motions for judgment, claiming Appellant had not 
proven his case. The court granted the motions. The court then scheduled a later 
date for a bench trial on the Wilson’s counterclaim for sanctions. On October 
28, 2003, the court held the sanctions hearing and at the conclusion of the 
hearing the court withheld a ruling until the court reporter could transcribe 
the trial on the merits. On November 24, 2003, the court signed a judgment that 
Appellant take nothing by his suit. On that same day, the court signed two 
separate orders, one for Wilson and one for the Webbs, awarding sanctions to 
Appellees under Rule 13.
        The 
nine-page sanctions order in favor of Wilson recites that Appellant filed 
groundless pleadings for the purpose of harassment, in violation of Rule 13. The 
trial court awarded Wilson attorney’s fees as sanctions in the amount of 
$28,728.50, and appellate attorney’s fees that are contingent upon an 
unsuccessful appeal by Appellant. The trial court also awarded Wilson $7,021.78 
for out-of-pocket expenses and $11,000 representing the value of his time spent 
away from his business as a direct result of Appellant’s offensive conduct.
        The 
four-page sanctions order in favor of the Webbs recites that the court on its 
own motion applied Wilson’s request for sanctions under Rule 13 to the Webbs 
“since sanction issues were identical to all defendants and plaintiffs were on 
notice as to the implications of Rule 13 of the Texas Rules of Civil 
Procedure.” The court found that Appellant filed his suit against the Webbs 
for purposes of harassment and in bad faith. The trial court awarded the Webbs 
$11,596.25 in attorney’s fees for defending themselves against Appellant’s 
“groundless” lawsuit, and appellate attorney’s fees that were contingent 
upon an unsuccessful appeal by Appellant.
TRIAL COURT’S FINDINGS AND CONCLUSIONS
        The 
trial court initially filed twelve pages of findings of fact and conclusions of 
law regarding the judgment and sanctions awarded in favor of Wilson; the court 
subsequently filed twelve more pages of supplemental findings of fact and 
conclusions of law.  The court made a total of 118 findings of fact and 125 
conclusions of law.  Both the original and supplemental findings and 
conclusions indicate they are regarding the judgment and sanctions order in 
favor of Wilson.  However, in the text of the supplemental findings and 
conclusions, the court also mentions the judgment and sanctions order in favor 
of the Webbs.
        The 
findings relevant to the specific sanctions issues raised by Appellant on appeal 
will be discussed in the pertinent sections of this opinion.  In its 
findings of fact and conclusions of law, the court found that Appellant has 
significant experience in purchasing real property at tax foreclosure sales, 
owning over 100 properties.  In 1997, Appellant purchased approximately 
nine acres of property at a tax foreclosure sale for $13,900.  Laney Road, 
a thirty-foot road and utility easement (“the easement”), has been in 
existence since at least the 1930s, and is located to the west of Appellant’s 
property.
        The 
court found that Appellant knew this was an easement and not his private 
property, and Appellant threatened Appellees that if they didn’t clean up, 
then Appellant would sue them. At the request of all parties, the court viewed 
Appellant’s property which was littered with “a vast amount of refuse.”[2]
        The 
court found that before Appellant filed suit for trespass and for violations of 
the water code, he went to Wilson’s house and threatened him that if Wilson 
did not clean up the mounds of litter on Appellant’s property, Appellant would 
sue him.[3]  The court determined that Wilson did 
not trespass on Appellant’s property or divert surface water.  The court 
further held that prior to suit being filed, Appellant knew that the Webbs had 
never asked Wilson to perform any work on the easement, nor had the Webbs 
directed any of the actions taken by Wilson.
TEXAS RULE OF CIVIL PROCEDURE 13
        This 
rule provides, in pertinent part:
  
The signatures of attorneys or parties constitute a certificate by them that 
they have read the pleading, motion or other paper; that to the best of their 
knowledge, information, and belief formed after reasonable inquiry the 
instrument is not groundless and brought in bad faith or groundless and brought 
for the purpose of harassment. . . . If a pleading, motion or other paper is 
signed in violation of this rule, the court, upon motion or upon its own 
initiative, after notice and hearing, shall impose an appropriate sanctions 
available under Rule 215-2b, upon the person who signed it, a represented party, 
or both.
  
Courts 
shall presume that pleadings, motions, and other papers are filed in good faith. 
No sanctions under this rule may be imposed except for good cause, the 
particulars of which must be stated in the sanction order. “Groundless” for 
purposes of this rule means no basis in law or fact and not warranted by good 
faith argument for the extension, modification, or reversal of existing law.
  
Tex. R. Civ. P. 13. The purpose of Rule 
13 is to check abuses in the pleading process, i.e., to insure that at the time 
the challenged pleading was filed the litigant's position was factually well 
grounded and legally tenable. Home Owners Funding Corp. v. Scheppler, 815 
S.W.2d 884, 889 (Tex. App.—Corpus Christi 1991, no writ). The burden is on the 
party moving for sanctions to overcome the presumption of Rule 13 that the 
pleading was filed in good faith. GTE Communications Sys. Corp. v. Tanner, 
856 S.W.2d 725, 731 (Tex. 1993) (orig. proceeding).
APPELLANT’S ISSUES
        Appellant 
raises nine issues on appeal related to the granting of the sanctions against 
him. Appellant contends the sanctions were an abuse of discretion because he 
proved a prima facie case and therefore sanctions were not appropriate, there 
was no evidence of groundless pleading or bad faith on the part of Appellant, 
the trial court erred by ignoring a judicial admission made by Wilson’s 
attorney, the trial court erred by not making the required findings to support 
the sanctions, the sanctions were excessive, and sanctions should not have been 
awarded to the Webbs because they did not plead for sanctions. While some of 
these issues are argued separately, most are argued jointly.
        A 
statement in Appellant’s brief recites that he appeals from the trial 
court’s take nothing verdict, and his sixth issue contends he proved a prima 
facie case of trespass. However, other than arguing this issue in the context of 
the award of sanctions, Appellant has not briefed the issue on the merits. 
Further, during oral argument before this court, Appellant did not indicate that 
he was appealing the merits of the case. Therefore, the propriety of the trial 
court’s take nothing judgment is not before us in this appeal.
STANDARD OF REVIEW
        We 
review Rule 13 sanctions under an abuse of discretion standard. Stites v. 
Gillum, 872 S.W.2d 786, 788 (Tex. App.—Fort Worth 1994, writ denied). See 
GTE Communications, 856 S.W.2d at 730-32 (applying abuse of discretion test 
to review of sanctions imposed under Rule 13). To determine whether a trial 
court abused its discretion, we must decide whether the trial court acted 
without reference to any guiding rules or principles; in other words, whether 
the act was arbitrary or unreasonable. Downer v. Aquamarine Operators, Inc., 
701 S.W.2d 238, 241-42 (Tex. 1985), cert. denied, 476 U.S. 1159 (1986). 
Merely because a trial court may decide a matter within its discretion in a 
different manner than an appellate court would in a similar circumstance does 
not demonstrate that an abuse of discretion has occurred. Id.
        In 
reviewing the imposition of Rule 13 sanctions, a trial court’s ruling should 
be overturned only when it is based on an erroneous view of the law or a clearly 
erroneous assessment of the evidence. Tarrant County v. Chancey, 942 
S.W.2d 151, 154 (Tex. App.—Fort Worth 1997, no writ); Stites, 872 
S.W.2d at 788.[4]   To make this 
determination, we review the "particulars" of good cause set out in 
the sanctions order.[5]  See Miller v. 
State and County Mut. Ins. Co., 1 S.W.3d 709, 717-18 (Tex. App.—Fort Worth 
1999, pet. denied).  In deciding whether a pleading meets the test of being 
both groundless and brought for the purpose of harassment, a trial court must 
examine the facts and circumstances existing at the time the pleading was filed. 
Chancey, 942 S.W.2d at 155.
        The 
Texas Supreme Court has stated that sanctions under Rules 13 and 215.2(b) must 
be “just,” which means there must be a reasonable relationship between the 
offensive conduct and the sanction imposed, and the sanction must not be 
excessive, i.e., the punishment should fit the crime. TransAmerican Natural 
Gas Corp. v. Powell, 811 S.W.2d 913, 917 (Tex. 1991)(orig. proceeding).
SANCTIONS AWARDED TO THE WEBBS
        In 
his fourth issue, Appellant asserts sanctions should not have been awarded to 
the Webbs because they never pled for sanctions either in their pre-trial 
pleadings, during trial, or after the trial, and therefore Appellant was not on 
notice that he would need to defend against a request by the Webbs for sanctions 
under Rules 13 and 215.
        Rule 
47 states that an original pleading which sets forth a claim for relief, whether 
an original petition, counterclaim, cross-claim, or third party claim, shall 
contain “a short statement of the cause of action sufficient to give fair 
notice of the claim involved.”  Tex. 
R. Civ. P. 47.  Additionally, a trial court’s final judgment must 
conform to the pleadings and the nature of the case proved so as to give the 
party all the relief to which they may be entitled either in law or in 
equity.  Tex. R. Civ. P. 
301.  A judgment must be based upon pleadings, and as the Texas Supreme 
Court has stated:
  
“(A) plaintiff may not sustain a favorable judgment on an unpleaded cause of 
action, in the absence of trial by consent. . . ."  In determining 
whether a cause of action was pled, plaintiff's pleadings must be adequate for 
the court to be able, from an examination of the plaintiff's pleadings alone, to 
ascertain with reasonable certainty and without resorting to information aliunde 
the elements of plaintiff's cause of action and the relief sought with 
sufficient information upon which to base a judgment.  Mere formalities, 
minor defects and technical insufficiencies will not invalidate a default 
judgment where the petition states a cause of action and gives "fair 
notice" to the opposing party of the relief sought.
  
Stoner 
v. Thompson, 578 S.W.2d 679, 682-83 (Tex. 1979) (internal citations 
omitted).  See Oil Field Haulers Ass'n v. R.R. Comm’n, 381 S.W.2d 
183, 191 (Tex. 1964) (stating general rule that plaintiff may not sustain a 
favorable judgment on an unpleaded cause of action in the absence of trial by 
consent).
        Appellant 
is correct that the Webbs never pled for sanctions. Their original answer 
requested attorney’s fees without stating the basis for their recovery.[6]  Before the beginning of testimony on the first day 
of the two-day sanctions hearing, the Webbs’ attorney told the court that his 
clients have suffered losses as a result of Appellant’s “bully 
tactics.”  Without mentioning sanctions, the Webbs’ attorney stated 
that the Webbs had to miss work and had incurred attorney’s fees.  
Appellant’s attorney strenuously objected that the Webbs had not presented any 
evidence at the trial on the merits regarding their claim for attorney’s fees, 
so it was waived; had never informed Appellant or the court of the reason why 
they believed they were entitled to attorney’s fees simply because they had 
prevailed on the merits; and had not filed any type of motion or document asking 
for sanctions.[7]  Appellant’s attorney further 
objected that the Webbs “really ought not to be here unless they are going to 
be witnesses because there are no pleadings.  We object to anything being 
tried by the Webbs for which there are no pleadings.”  Although present 
at the hearing, the Webbs’ attorney did not further participate in the first 
day of the sanctions hearing.
        At 
the beginning of the second day of the sanctions hearing, a different attorney 
informed the court that she was present representing the Webbs in place of the 
first attorney who had other obligations.  Appellant’s attorney stated, 
“Your Honor, again we of course make our same objection to [the Webbs’ 
second attorney] that we did earlier.  And I believe the Court’s carrying 
that.”  Although present, the Webbs’ attorney did not participate in 
the second day of the sanctions hearing, but as the hearing concluded stated:
  
Your Honor, may I speak just a moment.  I’m 
not a part of any sanctions hearing, I realize that.  But up 
until now we have not had a chance to even offer evidence of how much the Webbs 
have paid in attorneys fees, and we did ask for attorneys fees in our 
answer.  We did plead some verified denials and some affirmative 
defenses.  And I would just like the opportunity to present that evidence 
whenever the Court deems it proper.  And we would be asking that under 
equitable principles. [Emphasis added]
 
        Appellant’s 
attorney objected that the Webbs “have not applied for nor done anything” 
nor do they have any pleadings to support their claim.  When the court 
questioned the Webbs’ attorney regarding the nature of their claim, the 
attorney responded that “we simply asked for attorneys fees in our -- in our 
answer which contained, as I said, verified denials and some affirmative 
defenses.”  Appellant’s attorney stated, “It is not identified as a 
counterclaim, nor is it filed as a counterclaim, nor was service of process 
accomplished as a counterclaim, Your Honor.  They just threw a general 
‘we want our attorneys fees’ claim in their answer.”
        The 
court informed the parties that “It is going to take me some time to sort out 
all these issues, obviously; but I’m going to let you offer your testimony 
regarding attorneys fees.  And I would like for you to give me some -- 
something to support them in the law.”
        Given 
the fact that the Webbs’ original answer contained a request for attorney’s 
fees, we can certainly understand why the trial court permitted their attorney 
to testify concerning the amount and reasonableness of the attorney’s fees 
sought by them.  The court then requested that the Webbs provide the court 
with legal support for their alleged entitlement to attorney’s fees.  
However, other than the “Statement of Attorney Fees” mentioned in footnote 7 
of this opinion, the record does not contain any brief, pleading, or other 
document filed by the Webbs in the trial court addressing this issue, either 
pre- or post-trial.[8]
        In 
its order granting sanctions to the Webbs, the trial court stated:
  
The Court, on its own motion, applied the sanctions request to all defendants in 
this case, since sanction issues were identical to all defendants and plaintiffs 
were on notice as to the implications of Rule 13 of the Texas Rules of Civil 
Procedure.
 
In 
its findings of fact, the court found that the Webbs “requested attorneys fees 
as sanctions in their pleadings.”
        After 
the trial court entered the sanctions order in favor of the Webbs, Appellant 
filed a motion for new trial asserting, interalia, that the award of 
sanctions to the Webbs was improper because there were no pleadings to support 
the award and therefore Appellant did not have fair notice under Rule 13 that 
the court might award sanctions.  The Webbs did not file a response and the 
motion for new trial was overruled by operation of law.
        In 
their reply brief on appeal, the Webbs do not address Appellant’s contention 
that sanctions were not appropriate because there were no pleadings or notice to 
Appellant that the Webbs were seeking attorney’s fees as sanctions under Rule 
13 or any other rule. In oral argument before this court, the Webbs asserted 
that Appellant was on notice that the Webbs sought sanctions under Rule 13 
because this issue was discussed at the end of the case on the merits.  A 
review of the record indicates that at the conclusion of Appellant’s case on 
the merits, the trial court granted a take nothing judgment in favor of Wilson 
and the Webbs.  Wilson’s attorney then said he had three witnesses he 
needed to call in order to establish frivolousness.  Appellant’s attorney 
objected to proceeding with a sanctions hearing because the present trial 
setting was to try the merits of the case, and he and his client did not have 
notice of a sanctions hearing.  Wilson’s attorney responded that Wilson 
had a pending counterclaim.  The court determined that it would set a 
separate hearing for the counterclaim.  Although the Webbs’ attorney was 
present during this discussion, she did not participate in the discussion 
regarding frivolousness, the Wilson’s pending counterclaim, or setting a 
separate hearing date for a sanctions hearing.
        Attorney’s 
fees are not automatically recoverable by the prevailing party to a lawsuit; a 
party may recover attorney's fees only if provided for by statute or by 
contract.  Gulf States Utils. Co. v. Low, 79 S.W.3d 561, 567 (Tex. 
2002).  Rule 13 authorizes such sanctions as are available under Rule 
215.2(b), which includes attorney’s fees. Tex. R. Civ. P. 13, 215.2(b); Stites, 
872 S.W.2d at 796.  Additionally, Rule 13 provides that if a pleading is 
signed in violation of the rule, the trial court “upon its own initiative, 
after notice and hearing” shall impose appropriate sanctions.”  Tex. R. Civ. P. 13.  Therefore, in 
the instant case, assuming the other requirements of Rule 13 were met, the trial 
court was authorized to impose sanctions on its own motion, and these sanctions 
could include attorney’s fees for the Webbs.
        Appellant 
contends that he was not on notice from either the Webbs or the trial court that 
the Webbs sought to recover attorney’s fees as sanctions under the specific 
requirements of Rule 13 or any other rule. The record reflects that although the 
Webbs’ original answer sought attorney’s fees, they never filed any pleading 
that would put Appellant on notice that the attorney’s fees were sought as 
sanctions under the provisions of Rule 13 which contains very specific elements 
that must be proved prior to the assessment of attorney’s fees as 
sanctions.  Indeed, we find it significant that at the sanctions hearing 
the Webbs’ own attorney volunteered to the court in no uncertain terms that 
she “was not a part of any sanctions hearing”; she just wanted to present 
evidence of her clients’ attorney’s fees because their original answer 
contained a request for attorney’s fees.
        Appellant’s 
attorney repeatedly objected to the Webbs’ attorney testifying in the 
sanctions hearing regarding attorney’s fees because the Webbs did not have any 
pleadings on file pertaining to sanctions. Therefore, the record clearly 
reflects that this issue was not tried by consent.  Lastly, there is no 
indication that the trial court ever provided notice to Appellant either prior 
to or at the sanctions hearing, or at any time before entering the sanctions 
order in favor of the Webbs, that the court on its own initiative was 
considering imposing sanctions in favor of the Webbs under Rule 13.
        Considering 
all the facts presented in the record, along with the procedural history of the 
case, we conclude that Appellant was never put on notice by the Webbs or by the 
trial court that sanctions might be awarded against him under Rule 13 with 
regard to the Webbs.[9]  We hold the trial court 
abused its discretion in awarding sanctions in favor of the Webbs, and we 
sustain Appellant’s fourth issue.
SANCTIONS AWARDED TO WILSON
        Although 
Appellant was present at the trial on the merits of his claim, he did not appear 
at the two-day sanctions hearing.  The trial court found that Appellant 
acquired the subject property at a tax foreclosure sale for $13,900 and has 
significant experience in purchasing real property at tax foreclosure sales, 
owning over 100 properties.  The court determined that Wilson did not 
trespass on Appellant’s property, and Appellant produced no evidence, or 
alternatively no credible evidence, as to who supposedly trespassed on his 
property during the time frame alleged.  The court held that Appellant’s 
allegations regarding conduct that allegedly occurred on his property took place 
on a dedicated easement, and such conduct was permitted.  The court found 
that prior to filing suit, and after suit was filed and well before trial, 
Appellant knew of the existence of the dedicated easement, yet groundlessly 
proceeded with his claims for trespass.
        The 
court found that at trial on the merits neither Appellant nor his only other 
witness, Massey Ebrahim, a friend and business associate of Appellant, testified 
that they saw Wilson do any of the acts that Appellant alleged in his 
lawsuit.  Further, neither Appellant nor Ebrahim performed any tests with 
regard to the property to determine whether any surface water drainage had 
occurred.
        The 
court found that one year after Wilson’s alleged trespass on Appellant’s 
property, Appellant made a monetary demand on Wilson for alleged trespass and 
threatened that if Wilson did not clean up the items on the property,[10] Appellant would make the next five years of Wilson’s 
life a “living hell” because Appellant had “a family full of lawyers.”
        Regarding 
Appellant’s claim for violation of the Texas Water Code, the court found that 
Appellant introduced no evidence, or alternatively no credible evidence, that 
the natural flow of surface water drainage was altered, causing damage to 
Appellant.  The court concluded that Appellant’s claim for violation of 
the Texas Water Code was groundless in its entirety and brought for purposes of 
harassing Wilson.
        The 
court also determined that Appellant intimidated and harassed Wilson’s 
nine-year-old and eleven-year-old daughters by going to Wilson’s house when 
Wilson was not home and by making numerous harassing telephone calls to 
Wilson’s home.  Wilson’s daughters both testified at the sanctions 
hearing and their testimony supports the trial court’s findings.
        The 
court further determined that the offensive conduct of Appellant is independent 
of the acts of his attorneys and constitutes just cause to award sanctions 
against Appellant pursuant to Rule 13.  The court concluded that the 
sanctions requested by Wilson (i.e., attorney’s fees, litigation expenses, and 
costs) could have been avoided had Appellant, who is experienced in real estate 
matters, not filed this suit with the knowledge that his claims were groundless 
and brought for the purpose of harassment.
        Having 
reviewed the trial court’s findings and all the evidence, we hold that the 
evidence supports the trial court’s findings that Wilson overcame the 
presumption that Appellant’s pleadings were filed in good faith, and Wilson 
established that Appellant’s actions in filing his original petition and in 
pursuing the case against Wilson for five years (from time of filing until 
trial) were groundless and brought for purposes of harassment.  We overrule 
Appellant’s first, second, third, fifth, and sixth issues.
        Appellant’s 
issues seven (appellate attorney’s fees cannot be awarded as sanctions) and 
eight and nine (the sanctions were inappropriate and excessive) were not argued 
or briefed by Appellant.  Accordingly, they are waived.  See Tex. R. App. P. 38.1(h).
CONCLUSION
        We 
affirm the trial court’s order awarding sanctions to Wilson.  We reverse 
the trial court’s order awarding sanctions to the Webbs and render judgment 
that the Webbs are not entitled to sanctions.
   
                                                                  DIXON 
W. HOLMAN
                                                                  JUSTICE
 
 
PANEL 
B: LIVINGSTON, HOLMAN, and WALKER, JJ.
 
DELIVERED: 
March 31, 2005


NOTES
1.  
See Tex. R. App. P. 47.4.
2.  
The court recited that the property was littered with “a vast amount of 
refuse, including an abandoned mobile home with large sections of its siding 
missing or vandalized, a broken down school bus, broken down cars, broken down 
boats, thousands of railroad ties piled in at least four stacks ranging from 3-6 
feet high and up to 300 feet in length, piles of concrete, old tires, abandoned 
furniture, desks, shelves work benches, paint cans, oil drums, tar cans, fence 
pallets, an old refrigerator, bicycles, and other garbage.”
3.  
Specifically, the court found that when Wilson refused to clean up the property 
because he had not put any of the items on the property, Appellant said he had a 
family full of lawyers and would make the next five years of Wilson’s life a 
“living hell.”  After these threats were made, Appellant went to 
Wilson’s home on an afternoon when Wilson was not there.  Appellant 
approached Wilson’s nine-year-old and eleven-year-old daughters and told them 
he was going to sue their daddy.  Appellant then began making numerous 
threatening phone calls to Wilson’s house at times when he knew Wilson and his 
wife would not be home, but the daughters would be present.  Appellant 
interrogated the daughters regarding Wilson’s financial information and other 
personal matters.
4.  
See also Cooter & Gell v. Hartmarx Corp., 496 U.S. 384, 405, 110 S. 
Ct. 2447, 2461 (1990) (discussing abuse of discretion test as applied to 
sanctions imposed pursuant to Fed. R. Civ. 
P. 11), and Chambers v. Nasco, Inc., 501 U.S. 32, 55, 111 S. Ct. 
2123, 2138 (1991) (abuse of discretion test is applied to sanctions imposed 
under a court's inherent power).
5.  
We do not agree with Appellant’s assertion that the trial court's orders do 
not set forth the particulars of the good cause justifying the sanctions.  
The orders, along with the court's findings of fact and conclusions of law, 
clearly specify the particular acts upon which the sanctions were based.  Cf. 
Chancey, 942 S.W.2d at 155 (holding sanctions order was too general to 
support award).
6.  
The entirety of the Webbs’ pleading regarding attorney’s fees states 
“Because of plaintiff’s allegations in plaintiff’s petition, it was 
necessary for defendants to retain the services of [Webbs’ attorney], a 
licensed attorney to defend their rights in this matter.”
7.  
Prior to the trial on the merits, the Webbs’ attorney filed a “Statement of 
Attorney Fees” which recites that the Webbs have paid her a specified flat 
fee, and that her future fee will be $200 per hour.   This document 
does not mention any request by the Webbs that Appellant reimburse them for 
their attorney’s fees.
8.  
This is unlike the series of documents filed by Wilson and Appellant regarding 
the attorney’s fees sought by Wilson.  Prior to the sanctions hearing, 
Wilson filed a trial brief on the issue of the sanctions sought by him.  
After the sanctions hearing and before the judgment and sanctions orders were 
signed, Appellant filed a post-trial brief addressing the issue of sanctions for 
Wilson and the Webbs.  Wilson then filed a response, to which Appellant 
responded.
9.  
When an order of sanctions refers to one specific rule, either by citing the 
rule, tracking its language, or both, we are confined to determining whether the 
sanctions are appropriate under that particular rule.  See Finlay v. 
Olive, 77 S.W.3d 520, 524 (Tex. App.—Houston [1st Dist.] 2002, no pet.); Metzger 
v. Sebek, 892 S.W.2d 20, 51 (Tex. App.—Houston [1st Dist.] 1994, writ 
denied), cert.denied, 516 U.S. 868 (1995).  Because neither the 
trial court’s sanctions order nor its findings and conclusions make any 
mention of awarding sanctions under Chapter 9 of the Civil Practice and Remedies 
Code, we need not determine whether the sanctions award to the Webbs can be 
upheld under that chapter.
        However, 
we note that although Chapter 9 permits the trial court to award sanctions on 
its own initiative if a party files a frivolous pleading, the trial court is 
first required to provide specific notice to the offending party.  See 
Tex. Civ. Prac. & Rem. Code Ann. 
§ 9.012 (court may on its own motion determine a pleading is frivolous and 
“the court shall, not earlier than 90 days after the date of the 
determination, at the trial or hearing or at a separate hearing, following 
reasonable notice to the offending party, impose an appropriate 
sanction”).  See also id. § 10.002 (“The court on its 
own initiative may enter an order describing the specific conduct that appears 
to violate Section 10.001 [signing frivolous pleading or motion], and direct the 
alleged violator to show cause why the conduct has not violated that 
section.”).
10.  
See items listed in footnote 2, infra.